Peter Saup *et al.*

*v.*

J. S. Morgan & Co.

*Filed at Mt. Vernon January 22, 1884.*

1. Taxation—*tax on capital stock is a personal tax.* Capital stock of a corporation is personal property, having no ingredient of real estate, and hence a tax levied on it is clearly a personal tax, and becomes a lien on personal property only from the issue of the warrant for its collection.

2. Same—*lien lost by return of warrant.* The lien of a collector's warrant upon personal property of the tax debtor for his personal tax expires on the return of the warrant to the county clerk, and the issue of a subsequent warrant for the collection of such tax will not affect the rights of an intermediate purchaser of personal property from the tax debtor, and he will take the property free from any lien on the part of the State; and if it is attempted to be levied on for such taxes, the levy may be perpetually enjoined on bill by such purchaser.

Writ of Error to the Circuit Court of Alexander county; the Hon. David J. Baker, Judge, presiding.

This was a bill in chancery, by J. S. Morgan, S. E. Peabody and J. C. Rogers, against Peter Saup, collector of the county of Alexander, Robert Wilson, James H. Carter, George

E. Beerwith, W. J. Coppinger, Benjamin F. Logan, William M. Lewis, John T. Burketh, and George Michels, collectors, respectively, of the counties of Pulaski, Johnson, Saline, Williamson, White, Lawrence, Wabash and Edwards.

Mr. A. G. DAMRON, Mr. L. M. BRADLEY, Mr. W. V. CHOISSER, and Mr. P. A. PEARCE, for the plaintiffs in error.

Messrs. GREENE, BURNETT & HUMPHREY, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill to enjoin taxes levied on the capital stock of the Cairo and Vincennes Railroad Company. The bill alleges that defendants in error are the owners of the rolling stock used in operating the road; that the collectors of taxes in the various counties through which the road is located, are threatening to seize and sell their rolling stock to pay that tax. It is also alleged that a suit in chancery was pending in the United States Circuit Court for the Southern District of Illinois, and that on the 5th of March, 1874, the court appointed two receivers to take charge of the road and property; that one of them declined to act, and another was appointed in his stead on the 12th day of May following; that they entered upon the discharge of their duties in the premises, and commenced operating the road; that on the 6th day of January, 1875, the receivers petitioned the court for leave to borrow money to pay taxes due from the road, and to make improvements permanent in their character; that leave was granted, and they, on the 1st day of February, 1875, borrowed of complainants the sum of $80,027.85, and mortgaged the rolling stock to secure its payment; that the sum borrowed was not paid at maturity, and complainants applied for and obtained leave to foreclose the mortgage, which they did, and became the purchasers on the 28th day

of April, 1876; that the receivers thereupon applied to the court for leave to lease the rolling stock thus purchased by complainants, to be used in operating the road, and leave was granted, and the lease was made; that the State Board of Equalization, at its session in 1873, assessed the tangible property of the railroad at $1,134,757, upon which the tax has been paid, and at the same session the board fixed the valuation of the capital stock of the company at $1,099,887; that this assessment of capital stock was apportioned among the counties through which the road was located; that the tax was levied and extended by the clerks of these various counties in the collectors' books, and they were delivered to them for the collection of the taxes, but they were not collected, and the various collectors returned their tax warrants in the month of June, 1874, upon which the taxes on the capital stock for 1873 were extended. It is charged that by that return all lien on the rolling stock of complainants was lost and discharged. It is also charged that the taxes on the capital stock for the year 1873 were not carried forward to the collectors' warrants for the tax of 1874 for collection. It is further charged that at the time the chattel mortgage was executed on the rolling stock, the only tax books in the hands of the different collectors were the books for the taxes of 1874, and upon them there was no entry of capital stock for the year 1873; that in April, 1876, when the chattel mortgage was foreclosed and complainants purchased the rolling stock, the collectors' warrants of 1875, and no others, were in the hands of the collectors, and the taxes on the capital stock for the year 1873 were on none of the collectors' warrants; that the tax warrants for 1874 and 1875 were returned in the month of June following their receipt, but the collectors' warrants delivered to these various collectors in the month of December, 1876, each embraced this tax on the capital stock for 1873, and they were commanded to collect the same

by these warrants, and the collectors were threatening to seize and sell their rolling stock for the satisfaction of that tax. On a hearing in the circuit court the relief sought was granted, and a perpetual injunction was decreed, and the People bring the record to this court and assign various errors, only a portion of which we deem sufficiently important to require consideration.

Capital stock is personal, and not real, property. It has no ingredient of real estate, but it has every element of personalty. It is as much personal as notes or bonds. Not having a single element of realty, a tax levied on it is indisputably a personal tax. The 10th section of article 11, of our constitution, declares that the rolling stock and other movable property of any railroad company or corporation in this State shall be considered personal property, etc. Defendants in error purchased the rolling stock after the return of the warrant to the county clerk, and after the lien had expired, and consequently free from the lien. Having purchased it free from the lien, it could not be revived on this property in the hands of a purchaser by issuing another tax warrant in 1876. No doubt the subsequent warrant became a lien on the personal property owned by the railroad at the time it was issued, but not on the property of other persons. The statute will not bear a construction that the lien on personal property is perpetual, and can be revived at any time by issuing a new collector's warrant against property after it has been sold free from the lien.

The entire record considered, we fail to find any error for which the decree of the circuit court should be reversed, and it is affirmed.

*Decree affirmed.*